```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

TRUSTEES OF THE UNITED FOOD AND
COMMERCIAL WORKERS LOCAL 2013 HEALTH
AND WELFARE FUND,                            MEMORANDUM & ORDER
                                              22-CV-62 (EK)(PK)
                    Plaintiff,


              -against-

AMERICARE, INC.,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

This is a dispute between an employee benefit fund and an employer required to pay into that fund. The plan in question is the United Food and Commercial Workers Local 2013 Health and Welfare Fund ("the Fund"). The Fund provides healthcare benefits to employees of Americare, a company that provides home healthcare assistance. Americare contributes to the Fund pursuant to a collective bargaining agreement with Local 2013 ("the Union").

The Fund's trustees originally sued Americare for failing to contribute to the Fund as required by the collective bargaining agreement, and for blocking a compliance audit to which the trustees were allegedly entitled under that agreement. Americare responded with counterclaims against the trustees, the Union, and the Union's president (Louis Mark Carotenuto). Those

counterclaims arose under the Labor Management Relations Act ("LMRA"); the Employee Retirement Income Security Act ("ERISA"); and New York common law.

Americare contends that it actually *overpaid* its contributions to the Fund. This happened, according to Americare, because the counterclaim-defendants permitted Americare employees to waive their rights to healthcare benefits and neglected to inform Americare of those waivers. (An employee might waive if, among other things, his or her spouse had access to a plan s/he preferred to what Americare made available.) As a result, Americare alleges, the company paid more than $600,000 in benefits that went unclaimed — money that the Fund has not yet returned.

The counterclaim-defendants moved to dismiss those counterclaims, and that motion is now before the Court. For the reasons that follow, all counterclaims are dismissed except for the one arising under Section 403 of ERISA.

## I. Background

The following facts are drawn from the amended counterclaim / third-party complaint and are presumed true for purposes of this order. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Americare is a home-care services agency based in Brooklyn. Am. Counterclaim & Third-Party Compl. ("Am. Compl.")

2

¶¶ 4-5.  The Fund is an employee benefit fund organized pursuant to collective bargaining agreements ("CBAs") between Americare and the Union.  *Id.* ¶¶ 9-10, 17.  The Fund covers health benefits for Americare healthcare aides.  *Id.* ¶¶ 19-20.  One of the reasons Americare contributes to the Fund is to satisfy certain obligations under New York state law.  Under New York's Home Care Worker Wage Parity Act, Americare must pay its home health aides minimum wage plus $4.09 in "additional benefits."  *Id.* ¶¶ 7-8.  Americare provides some of those "additional benefits" by contributing money to the plan.  *Id.* ¶ 21.

During the pendency of two CBAs between Americare and Local 2013,[1] the three counterclaim-defendants (Carotenuto, the Fund, and the Union) "permitted [healthcare aides] who did not want to receive health coverage benefits . . . to waive their entitlement to such health coverage benefits."  *Id.* ¶ 24.  The counterclaim-defendants implemented this waiver policy without notifying or negotiating with Americare.  *Id.*  As a result, Americare continued to contribute money to the Fund on behalf of healthcare aides who did not want (or receive) benefits.  *Id.* ¶ 28.

Americare first learned about the waiver policy in early December 2020, when a Fund employee notified the company's

---

[1] These CBAs ran (1) from April 1, 2016 to March 31, 2019, and (2) from May 1, 2019 to June 30, 2022.  Am. Compl. ¶ 15.

human resources department.  *Id.* ¶¶ 29-30.  Twice that month, Americare requested a list of employees who had participated in the waiver program.  *Id.* ¶¶ 32-34.  The Fund did not provide the list.  *Id.* ¶ 35.  Americare then filed an unfair labor practice charge with the National Labor Relations Board ("NLRB").  *Id.* ¶ 36.  The Fund eventually produced the requested list in early May 2021.  *Id.* ¶ 37.

On June 1, 2021, Americare sent the Fund a letter requesting reimbursement of at least $600,000 in surplus benefits.  *Id.* ¶¶ 39-40.  The counterclaim-defendants have since "refused to resolve the waiver issue and overpayment issues."  *Id.* ¶ 44.[2]

## II.  Legal Standard

A motion to dismiss a counterclaim is subject to the same standard as a motion to dismiss an ordinary-course cause of action.  *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021).[3]  "[T]he court's task is to assess the legal feasibility of the [pleadings]."  *Lynch v. City of New York*, 952

---

[2] At oral argument, the counterclaim-defendants suggested they were retaining the alleged overpayments because they believed, based on an independent audit, that Americare owed more than $1 million to the Fund. Oral Arg. Tr. 45:9-21.  So, they might net the $600,000 in overpayments against Americare's even greater obligations to the Fund.  *Id.*  The Court need not, however, determine at this stage whether this is a legitimate basis on which to retain the allegedly overpaid funds, and we take no account here of the counterclaim-defendants' assertion concerning the magnitude of any underpayment.

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

F.3d 67, 75 (2d Cir. 2020).  In doing so, the Court "must take the facts alleged in the [pleading] as true, drawing all reasonable inferences in [the nonmovant's] favor."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).

To survive a motion to dismiss, counterclaims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The counterclaims are "deemed to include any written instrument attached to [them] as an exhibit or any statements or documents incorporated [therein] by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### III. Discussion

Americare brings counterclaims for (1) unfair labor practices under the LMRA, (2) common-law fraud, and (3) violation of Section 403 of ERISA.  The Court addresses each claim in turn.

**A.   The LMRA Claims**

Under the LMRA, "refus[ing] to bargain collectively with an employer" is an unfair labor practice.  29 U.S.C. § 158(b)(3).  When a CBA is in effect, "the duty to bargain collectively . . . mean[s] that no party to [the CBA] shall terminate or modify" it without first notifying the counterparty

5

and engaging in a statutorily mandated dispute resolution process. *Id.* § 158(d). Americare alleges that the counterclaim-defendants, by implementing the waiver policy without any notice, impermissibly sought to "unilaterally change the terms and conditions" of the CBA. Am. Compl. ¶ 53; *see also id.* ¶ 48.

1. The LMRA Claims Are Preempted

These claims are preempted. The NLRB has exclusive jurisdiction over claims challenging unfair labor practices under Section 158 of the LMRA. *S.D. Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959). And here, Americare expressly styles its LMRA claims as unfair-labor-practice claims. Am. Compl. 17-18. Thus, *Garmon* precludes this Court from reviewing those claims in the first instance.

Perhaps recognizing that *Garmon* bars its LMRA claims, Americare shifts gears in its opposition brief, arguing that it is *actually* bringing a breach-of-contract claim under Section 301 of the LMRA. *See* Americare Br. in Opp'n to Mot. to Dismiss 10, ECF No. 27. To be sure, Section 301 permits federal courts to hear — in the first instance — suits for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The fact remains, however, that Americare simply has not brought a Section 301 claim. That statutory

6

provision appears nowhere in the amended counterclaim-complaint.[4] And it is hornbook law that a party cannot amend its complaint in its brief opposing a motion to dismiss. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 177-78 (2d Cir. 1998).

    2.   <u>The LMRA Claims Fail Anyway</u>

Even if the Court were to construe the counterclaim-complaint as alleging a breach of contract under Section 301, dismissal would still be appropriate.

To determine whether a party has stated a valid Section 301 claim, we "look to traditional state contract law, when it is not inconsistent with federal labor policy, to form the context of the federal common law governing labor agreements." *See Dist. Lodge 26, Int'l Ass'n of Machinists v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010). In New York, a party must "identify what provisions of the contract were breached" to state a breach-of-contract claim. *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001); *see also Gianelli v. RE/MAX of N.Y., Inc.*, 144 A.D.3d 861, 862 (2d Dep't 2016). Americare has not done so here. Indeed, the

---

[4] Revealingly, Americare's original counterclaim-complaint *did* bring a Section 301 claim. So, Americare clearly consciously chose not to bring one in its amended counterclaims. This further undermines any argument that the Court should construe the amended counterclaim-complaint as bringing a Section 301 claim. *E.g.*, *Guerrero v. Douglas*, No. 22-CV-1217, 2023 WL 5020646, at *3 n.3 (E.D.N.Y. Aug. 7, 2023) ("[A] court is under no obligation to construe a counseled plaintiff's complaint as arguably raising claims it chose not to include.").

counterclaim-complaint identifies no particular provision of the contract that the counterclaim-defendants breached.

Americare tried to remedy this deficiency at oral argument. It asserted that the fund trustees breached Article IX of the CBA by failing to notify Americare about the waiver policy. Oral Arg. Tr. 21:17-22:3. Leaving aside the obvious issue that a party cannot amend its complaint through statements made at oral argument, *see United Prob. Officers' Ass'n v. City of New York*, No. 21-CV-218, 2022 WL 875864, at *8 n.9 (S.D.N.Y. Mar. 24, 2022), there are three other problems here.

First, the CBA does not expressly impose such a notice requirement on the Fund trustees. The provision on which Americare relies — Article IX — concerns only *Americare*'s obligations to contribute to the Fund. For example, Article IX(1) requires Americare to "participate in the [Fund] for each non-probationary employee who works twenty-five (25) hours per rolling thirteen (13) weeks average." *See* CBA 7, ECF No. 30. The Article says nothing about the Fund trustees' obligations to Americare, let alone about a notice requirement specifically.

Second, the CBA does not impliedly impose a notice obligation on the Fund trustees. "[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the

8

express terms of the contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (quoting 23 *Williston on Contracts* § 63:22 (4th ed. 2021)) (applying New York law).  Here, the CBA expressly contemplates that employees may waive health coverage.  *See* CBA 7.  Specifically, Article IX(2)(a) says that "[a]ny employee *waiving coverage* will not be permitted to rejoin the plan for a period of six (6) months after seeking reinstatement."  *Id.* (emphasis added).  Thus, Americare cannot plausibly allege that the Fund trustees violated any implied covenants or promises in the CBA by failing to notify Americare about the waiver policy.

Third, no default rule in New York contract law required the trustees to notify Americare about the waiver policy.  Americare alleges that when it made Fund contributions for employees who had waived coverage, it mistakenly over-contributed to the Fund.  Am. Compl. ¶¶ 31, 62.  But "[t]he obligation of a party to refund money voluntarily paid by mistake can arise only after the notification of the mistake and a demand of payment [by the counterparty]."  *Southwick v. First Nat'l Bank of Memphis*, 84 N.Y. 420, 430; *see also Mfrs. & Traders Tr. Co. v. World One Travel Ctr., Inc.*, 202 A.D.2d 974, 974 (4th Dep't 1994) (citing *Southwick*'s holding on necessity of demand for payment); *cf. Banque Worms v. BankAm. Int'l*, 570 N.E.2d 189, 196 (N.Y. 1991) (treating *Southwick*'s "discharge for

9

value" rule governing mistaken payments as good law). Americare was of course free to be in touch with its employees about their desire to waive any benefits, and thus could have provided such notification. It does not, however, allege any such notice.

In sum, even if the Court were to construe the counterclaim-complaint as bringing a Section 301 claim (which it does not), that claim would fail on the merits. As a concluding note, it is also unclear that Americare could even bring a breach-of-contract claim against the Fund or its president, neither of which appears to be a party to the underlying CBA. However, because Americare's Section 301 claim is defective in several other ways, the Court need not resolve that issue.

## B. The Fraud Claim

Americare alleges that the Fund's failure to notify it about the waiver program constituted fraud. Am. Compl. ¶¶ 57-58. This claim also fails on preemption grounds.

The fraud claim turns on the counterclaim-defendants' silence, so it is properly characterized as a fraud by omission or concealment. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (1st Dep't 2003). In New York, a claim for fraudulent concealment only lies if the "non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995)

10

(applying New York law).  Americare alleges that this duty to disclose flowed from Section 404 of ERISA, which outlines the fiduciary obligations that plan trustees owe to plan "participants and beneficiaries."  29 U.S.C. § 1104(a)(1); *see also* Am. Compl. ¶ 57.[5]

This allegation is fatal to the fraud claim.  ERISA preempts state-law fraud claims that have "as a critical factor in establishing liability the existence of . . . duties similar to those imposed by ERISA."  *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992).  Here, Americare does not just rely on a duty "similar" to one imposed by ERISA — it relies on a duty *actually* imposed by ERISA.  The fraud claim is therefore preempted, and must be dismissed for failure to state a claim.  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 309 (2d Cir. 2004).[6]

## C.  The ERISA Section 403 Claim

Finally, Americare brings a claim under Section 403 of ERISA, which permits it to seek repayment of the allegedly surplus benefits.  That claim may proceed.

---

[5] In addition to the preemption issue discussed below, Americare provides no support for the proposition that it — as an employer — is a "participant" or "beneficiary" to whom the Fund trustees owe a fiduciary duty under Section 404(a)(1).  Its claim would fail on that additional basis, too.

[6] Given this holding, the Court need not consider whether the LMRA also preempts the fraud claim.

11

1. <u>Americare Plausibly Pleads a Section 403 Claim</u>

When an employer makes a benefit contribution based on a mistake of fact or law, ERISA permits the employer to recover "such contribution or payment . . . within [six] months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C. § 1103(c)(2)(A). If the administrator refuses to repay the benefits, the employer "is entitled to repayment if it shows that [1] the refusal to repay was arbitrary or capricious and [2] the equities favor restitution." *Frank L. Ciminelli Constr. Co., Inc. v. Buffalo Laborers Supp. Unemp. Fund*, 976 F.2d 834, 835 (2d Cir. 1992). In the ERISA context, a decision is arbitrary and capricious if it was "made without reason [or] is unsupported by substantial evidence." *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 105 (2d Cir. 2017).

It is plausible that the counterclaim-defendants' conduct was arbitrary and capricious. The complaint alleges that the Fund (1) twice declined to provide a list of employees who had waived healthcare coverage, Am. Compl. ¶¶ 32-35; (2) only produced the list after Americare filed an NLRB complaint, *id.* ¶¶ 36-37; and (3) "refused to resolve the waiver issue and overpayment issues" even after Americare requested such resolution. Id. ¶ 44. The complaint does not allege that the counterclaim-defendants ever explained the basis for this

12

conduct. It is therefore plausible that they took these actions "without reason." *See Arnone*, 860 F.3d at 105. To be sure, the counterclaim-defendants suggested at oral argument they retained the money to cover a deficiency in Americare's Fund contributions. Oral Arg. Tr. 45:9-21. But that justification does not appear in the counterclaim-complaint, and the Court does not consider it here.

It is also eminently plausible that the equities favor restitution. The Fund allegedly retained $600,000 in payments to which it was not entitled, because its beneficiaries did not intend to claim that money. Am. Compl. ¶ 40. A basic goal of equity is "the return of that which rightfully belongs" to another party. *SEC v. Ahmed*, 72 F.4th 379, 402 (2d Cir. 2023). So, if the Fund wrongly retained Americare's money even after Americare requested it back, the equities could favor requiring the Fund to disgorge that money.

2. The Section 403 Claim Is Timely

The counterclaim-defendants argue that even if Americare has stated a claim under Section 403, that claim is untimely. This argument is unavailing.

As noted above, an employer may recover an overpayment "within [six] months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C. § 1103(c)(2)(A). The complaint does not allege that any such

13

determination has yet been made. But according to the counterclaim-defendants, the limitations period begins (1) when the plan administrator determines that a contribution was a mistake, *or* (2) when an employer learns about the alleged mistake. Counterclaim Defs.' Mem. in Supp. of Dismissal 22, ECF No. 26. Because Americare filed its counterclaim complaint nine months after June 2021 (when it first learned about the scope of the alleged overpayment and demanded a refund, *see* Am. Compl. ¶¶ 39-40), counterclaim-defendants argue that the company missed its six-month window.

The second triggering event urged by counterclaim-defendants appears nowhere in the statutory text. The only authority that the counterclaim-defendants summon for their two-part timeliness standard is a forty-year-old unreported case from the District of Hawaii, which itself cites no authority. Counterclaim Defs.' Mem. in Supp. of Dismissal 22 (citing *Haw. Carpenters' Trust Funds v. Waiola Carpenter Shop*, No. 83-CV-253, 1985 U.S. Dist. LEXIS 13893, at *3 (D. Haw. Nov. 14, 1985)). This is not enough to overcome the plain text of the statute. The Court therefore cannot conclude at this stage that the Section 403 claim was untimely.

### IV. Conclusion

For the foregoing reasons, the counterclaim-defendants' motion to dismiss is granted except as to the ERISA

Section 403 claim.  The remaining claims are dismissed without prejudice for failure to state a claim.

SO ORDERED.

                                         /s/ Eric Komitee
                                        ERIC KOMITEE
                                        United States District Judge

Dated:    September 30, 2025
             Brooklyn, New York